1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JESSE O'CON, JR.,

11          Plaintiff,                    No. CIV S-09-3471 EFB

12       vs.

13   MICHAEL J. ASTRUE, Commissioner
     of Social Security,
14
            Defendant.                    ORDER
15   _____/

16          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

17   ("Commissioner") denying his application for Social Security Disability Insurance Benefits

18   ("DIB") under Title II of the Social Security Act.  For the reasons discussed below, the court

19   grants defendant's motion and denies plaintiff's motion.

20   I.  BACKGROUND

21          Plaintiff, born July 26, 1976, formally applied for DIB on August 23, 2007.

22   Administrative Record ("AR") 123.  His application alleged that he had been disabled since

23   March 28, 2007.  *Id.* at 8.  The application was denied initially and upon reconsideration, and

24   plaintiff requested an administrative hearing.  *Id.*  On January 14, 2009, a hearing was held

25   before administrative law judge ("ALJ") Sandra K. Rogers.  *Id.*  Plaintiff was represented by

26   counsel at the hearing, and testified at the hearing, along with vocational expert Stephen B.

1  Schmidt. *Id.*

2  The ALJ issued a decision on June 12, 2009, finding that plaintiff was not disabled.[1]  *Id.*

3  at 8-18.  The ALJ made the following specific findings:

> ...the prior unfavorable decision of the undersigned dated March
> 27, 2007, and upheld by the Appeals Council on May 18, 2007,
> raises issues about the presumptions affecting the adjudication of
> the present case.  In *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir.
> 1988), the court reaffirmed the rule of Taylor v. Heckler, 756 F.2d
> 872 (9th Cir. 1985), that a decision by an Administrative Law
> Judge that a claimant is not disabled, which decision becomes
> final, creates a presumption of non-disability that the claimant
> must overcome in subsequent claims by proof of changed
> circumstances showing a greater degree of disability....
>
> ...The undersigned Administrative Law Judge has considered the
> medical and vocational evidence to determine whether there are
> such "changed circumstances," commencing March 27, 2007.  For
> the reasons expressed below, I find, after reviewing the recent
> evidence, that there are no substantial changes in the claimant's
> conditions since my previous decision dated April 14, 2003
> (Exhibit B3F).  Since there are no "changed circumstances," the

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. § 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits under both programs.  *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828, n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Bowen*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

2

1     so-called *Chavez* presumptions do apply.

2                                        ***

3     The undersigned adopts the March 27, 2007 decision, including all
      the exhibits in connection with the prior hearing (Exhibit B1A).
4
      1.  The claimant has met the insured status requirements of the
5     Social Security Act on June 30, 2007, but not thereafter.

6     2.  The claimant did not engage in substantial gainful activity
      during the period from his alleged onset date of March 28, 2007
7     through his date last insured of June 30, 2007 (20 CFR 404.1571 *et
      seq.*).
8
      3.  Through the date last insured, the claimant had the following
9     severe impairment: major depressive disorder (20 CFR
      404.1520(c)).
10
                                         ***
11
      4.  Through the date last insured, the claimant did not have an
12    impairment or combination of impairments that met or medically
      equalled one of the listed impairments in 20 CFR Part 404, Subpart
13    P, Appendix 1 (20 CFR 404.1525 and 404.1526).

14                                       ***

15    5.  After careful consideration of the entire record, the undersigned
      finds that, through the date last insured, the claimant had the
16    residual functional capacity to perform a wide range of simple
      repetitive tasks.
17
                                         ***
18
      6.  Through the date last insured, the claimant was capable of
19    performing past relevant work as a laborer in stores.  This work did
      not require the performance of work-related activities precluded by
20    the claimant's residual functional capacity (20 CFR 404.1565).

21                                       ***

22    7.  The claimant was not under a disability, as defined in the Social
      Security Act, from March 28, 2007, the alleged onset date, through
23    June 30, 2007, the date last insured (20 CFR 404.1520(f)).

24    *Id.* at 8-15.

25    ////

26    ////

1       Plaintiff requested that the Appeals Council review the ALJ's decision.  However, on

2   October 16, 2009, the Appeals Council denied review, leaving the ALJ's decision as the final

3   decision of the Commissioner of Social Security.  *Id.* at 1-4.

4   II.  <u>ISSUES PRESENTED</u>

5       Plaintiff contends that the ALJ erred in 1) finding that plaintiff failed to rebut the

6   presumption of continuing non-disability pursuant to *Chavez*; 2) failing to utilize the services of

7   a medical advisor to establish the onset date of his disability; 3) failing to discuss the weight

8   assigned to the VA disability rating; 4) failing to credit the examining opinion of Dr. White

9   without a legitimate basis for doing so; and 5) failing to properly credit the testimony of the VE

10  in response to questions which accurately reflected plaintiff's functional limitations.  Dckt. No.

11  19 at 3.

12  IV.  <u>LEGAL STANDARDS</u>

13      The Commissioner's decision that a claimant is not disabled will be upheld if the findings

14  of fact are supported by substantial evidence in the record and the proper legal standards were

15  applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

16  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

17  180 F.3d 1094, 1097 (9th Cir. 1999).

18      The findings of the Commissioner as to any fact, if supported by substantial evidence, are

19  conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

20  more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521

21  (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to

22  support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol.*

23  *Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

24      "The ALJ is responsible for determining credibility, resolving conflicts in medical

25  testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

26  2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

4

1    interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

2    *Thomas v. Barnhart*, 278  F.3d 947, 954 (9th Cir. 2002).

3    V.  ANALYSIS

4            A.       Presumption of Non-disability

5            Plaintiff contends that the ALJ erred in finding that plaintiff failed to rebut the

6    presumption of continuing non-disability pursuant to *Chavez v. Bowen*, 844 F.2d 691 (9th Cir.

7    1988).  In *Chavez*, the Ninth Circuit held that principles of res judicata apply to administrative

8    decisions regarding disability and impose an obligation on the claimant, in instances where a

9    prior ALJ has made a finding of non-disability, to come forward with evidence of "changed

10   circumstances" in order to overcome a presumption of continuing non-disability.  *Id.* at 693.  A

11   previous ALJ's findings concerning residual functional capacity, education, and work experience

12   are entitled to some res judicata consideration, and such findings cannot be reconsidered by a

13   subsequent judge absent new information not presented to the first judge.  *Id.* at 694; *see also*

14   *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008); Social Security Acquiescence

15   Ruling 97-4 (adopting the *Chavez* rule).

16           Here, the ALJ had issued a decision on March 27, 2007, finding that plaintiff was not

17   disabled.  The ALJ found that plaintiff did not present evidence of changed circumstances,

18   meaning evidence of a greater functional limitation or a more adverse vocational profile, and

19   therefore the ALJ properly applied a presumption of non-disability.

20           Plaintiff argues that the evidence he presented--his own testimony and examining

21   psychiatrist Dr. White's report--showed an increase in the severity of his mental impairment

22   sufficient to overcome the presumption of non-disability.  But the ALJ found that plaintiff's

23   testimony was not credible, and, as explained in more detail below, properly rejected Dr. White's

24   opinion.  Thus, the ALJ determined that no credible evidence demonstrated an increase in

25   severity of plaintiff's impairments, and properly applied the presumption of non-disability.

26   ////

B.    Onset Date

Plaintiff contends that the ALJ was required to use the services of a medical expert to determine the onset of plaintiff's disability.  Under *Armstrong v. Comm'r*, an ALJ must call a medical expert where the onset date of the disability is unclear.  *See* 160 F.3d 587, 590 (9th Cir. 1998).  But that requirement only applies where a claimant has been found disabled at some time.  *Id.*  Here, the ALJ did not find that plaintiff was disabled at any time, and she found that plaintiff had not been disabled through the date he was last insured.  Therefore, the ALJ was not required to call a medical expert.  *See Lair-Del Rio v. Astrue*, 380 Fed. Appx. 694, 696-97 (9th Cir. 2010) (unpublished opinion) (noting that the burden of proof remains with the claimant to prove disability before the expiration of disability insured status, and holding that ALJ did not err in not using a medical expert to determine disability onset where plaintiff was not disabled at any time).

C.    Veterans Affairs Evidence

Plaintiff contends that the ALJ erred in not mentioning his Veterans Affairs (VA) disability rating in her written opinion.  The record contains VA disability ratings from September 5, 2002 and January 1, 2007, granting disability benefits to plaintiff and finding "the veteran currently has a total service-connected disability."  AR 481.  These documents were created before the ALJ's prior hearing on February 7, 2007, and before her prior March 2007 decision.  *See id.* at 69.  In her March 2007 decision, the ALJ found that plaintiff was not disabled, and plaintiff did not appeal this decision.  However, plaintiff now argues that it is not clear whether these disability ratings were contained in the record when the ALJ issued her prior decision.  He implies that if the decisions were not contained in the prior record, the ALJ was required to discuss them in her 2009 decision.

It appears that the ALJ was likely aware of the VA disability ratings at the time of her March 2007 decision.  Although she did not specifically mention these VA ratings in her previous decision, she did note that the claimant was currently receiving VA benefits of

1   approximately $2300 per month, and she discussed VA doctors' medical opinions.  *Id.*

2          Regardless, even if the disability ratings were not contained in the record at the time of

3   the 2007 decision, the ALJ was not required to address them in her 2009 decision.  The VA

4   ratings are probative of whether plaintiff was disabled at the time that they were issued.  Plaintiff

5   did not appeal the ALJ's prior decision that he was not disabled as of March 27, 2007.  In the

6   application for benefits at issue in this action, plaintiff alleged that the date of onset of his

7   disability was March 28, 2007, the day after the ALJ's prior decision, and months after the last

8   VA rating.  At the 2009 hearing, plaintiff's attorney stated that plaintiff had decided to amend his

9   claim to allege that the onset date of his disability was June 6, 2007.  *Id.* at 19.  Plaintiff's

10  attorney said to plaintiff at the hearing, "And by asking the Judge to amend the alleged onset

11  date to June 6, of '07, that means that you are not alleging disability prior to that time.  You're

12  not asking the Judge to reopen her decision."  *Id.* at 20.  Plaintiff's attorney also said to the ALJ,

13  "we are not asking you in any way to reopen or modify your prior decision."  *Id.* at 19.

14         Thus, as the VA disability ratings should have been addressed in the ALJ's 2007

15  decision, and that decision is not at issue in this proceeding, the lack of discussion of the

16  disability ratings in her 2009 decision does not constitute reversible error.  Nor does the record

17  support a conclusion that the VA rating would have made a difference here.

18         D.      Examining Physician Opinion

19         Plaintiff contends that the ALJ erred in rejecting the examining opinion of Dr. White.  An

20  ALJ may reject the contradicted opinion of an examining physician only for "specific and

21  legitimate" reasons supported by substantial evidence in the record.  *Lester v. Chater*, 81 F.3d

22  821, 830-31 (9th Cir. 1995).  This test is met if the Commissioner sets out a detailed and

23  thorough summary of the facts and conflicting clinical evidence, states his interpretation of the

24  evidence, and makes a supported finding.  *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir.

25  1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of an

26  examining professional.  *Lester*, 81 F.3d at 830-31. The opinion of a non-examining

7

1   professional, without other evidence, is insufficient to reject the opinion of an examining

2   professional. *Id.* at 831.

3          Dr. White opined that plaintiff was markedly limited 1) in the ability to maintain

4   attention and concentration for extended periods, (the approximately 2 hour segments between

5   arrival and first break, lunch, second break, and departure) with four such periods in a workday;

6   2) in the ability to perform activities within a schedule, maintain regular attendance and be

7   punctual within customary tolerances; 3) in the ability to sustain an ordinary routine without

8   special supervision; 4) in the ability to work in coordination with or proximity to others without

9   being unduly distracted by them; 5) in the ability to complete a normal workday and workweek

10  without interruptions from psychologically based symptoms and to perform at a consistent pace

11  without an unreasonable number and length of rest periods; 6) in the ability to accept instructions

12  and respond appropriately to criticism from supervisors; 7) in his ability to get along with

13  co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and 8) in

14  his ability to set realistic goals or to make plans independently of others. *Id.* at 495-96.  She

15  wrote that he would be unable to complete a workday more than three or four times a month, and

16  that these limitations had existed at this severity level since June 6, 2007. *Id.* at 497.

17         The ALJ rejected Dr. White's opinion for the following reasons:

18     [I have] also considered Dr. Patricia White's opinion of the claimant as being
       extremely disabled mentally after only seeing the claimant one time (Exhibit
19     B14F).  The report from Dr. White completed on January 12, 2009 has few
       explanations or reasons for her limitations and her opinions are not well
20     supported; the limitations are not backed by citations to medical signs and
       laboratory results as required by SSR-96-4p.  Indeed, according to Dr. White's
21     report, the claimant was motivated to save money to go to the Philippines to visit
       a girlfriend in October 2008, and seemingly while there got married to this
22     woman.  Moreover, he has been seeking 90% custody of his young daughter, as
       opposed to the 50% custody he now has would seem to indicate he believes he
23     has the ability to care, not only for himself, but for the child as well.  I think it is
       fair to assert that anyone who has the motivation to go to the Philippines and back
24     and to actually leave his home, get on an airplane with hundreds of other people
       and take a trip to a foreign country to which I do not believe he had ever traveled
25     before and to get married there is not someone who is so depressed or anxious as
       to preclude all employment.  Dr. White's opinions are inconsistent with the
26     totality of the evidence, including the claimant's acknowledged activities and the

1    opinions of the State agency physicians.  For these clear and convincing reasons,
     pursuant to 20 CFR 404.1527(d) and Social Security Ruling 96-2p, the
2    undersigned finds Dr. White's opinions are neither persuasive nor controlling.
     Moreover, the psychiatric evaluation was completed after the claimant's dated
3    (sic) last insured.

4    *Id.* at 13.  Thus, the ALJ provided a number of specific, legitimate reasons for rejecting Dr.

5    White's opinion.

6           Plaintiff disputes the legitimacy of several of the ALJ's reasons.  Specifically, he claims

7    that even though Dr. White examined plaintiff only one time, she reviewed all of his medical

8    records and spent two hours with him on that occasion, and that Dr. White's opinion was backed

9    by her clinical observations of plaintiff (which included depressed mood, tearfulness, poor

10   concentration, limited attention span, poor goal-oriented thinking, distractibility, impaired sense

11   of time, paranoia, suspicion, and distrustfulness).  He points out that there are generally not

12   "laboratory findings" to corroborate a diagnosis of mental illness.  He further argues that even

13   though he traveled to the Philippines, he testified that he did not sleep on the 20-hour flight and

14   that he was "scared and always watching myself" when he was there, and that there was no

15   evidence of "hundreds" of people on the plane or that he had not previously visited the

16   Philippines.  Plaintiff further argues that he did not testify that he was seeking 90% custody of

17   his daughter, and that he testified that taking care of her was "really frustrating" for her, and that

18   "[e]very day is a struggle, but I try."  Dckt. No. 19 at 25-27.

19          Some of plaintiff's objections are well-taken.  It would not be reasonable to discount Dr.

20   White's opinion regarding plaintiff's mental impairments because of a lack of corroborating

21   laboratory findings.  It is also true that plaintiff testified that he did not remember seeking 90%

22   custody of his daughter.  *See* AR 40.  Although plaintiff disputes the accuracy of the ALJ stating

23   that "hundreds of other people" were on the plane to the Philippines and that plaintiff had never

24   visited the country before, her point, that plaintiff was able to interact with many people in order

25   to successfully travel to an unfamiliar country across the world, remains valid.  In any event,

26   even assuming the validity of these objections, there still remains adequate and legitimate

9

1   reasons stated by the ALJ for discounting Dr. White's opinion.  Although plaintiff may disagree

2   with the ALJ's reasons, if "the evidence is susceptible to more than one rational interpretation,

3   one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas*, 278

4   F.3d at 954.  Thus, although plaintiff notes that Dr. White reviewed all of his medical records

5   and spent more than two hours examining him, this does not render the ALJ's observation that

6   Dr. White only met plaintiff one time illegitimate.  Similarly, although plaintiff argues that Dr.

7   White noted that plaintiff had a depressed mood, tearfulness, and other signs of mental

8   impairment during the exam, Dr. White failed to connect these symptoms to the marked

9   limitations she assessed.  For example, she did not explain why he would be unable to complete

10  a workday more than three or four times a month.  As noted above, plaintiff's trip to the

11  Philippines shows that he was capable of interacting with strangers in an unfamiliar situation,

12  and that he had sufficient motivation to leave his home to undertake this trip.

13          Finally, Dr. White's opinion was formed after plaintiff's last date insured.  This

14  diminishes its probative value regarding plaintiff's mental state when he was insured.  Thus, the

15  ALJ adequately provided reasons for discounting Dr. White's opinion, and the Commissioner's

16  motion for summary judgment should be granted as to this issue.

17          E.      Vocational Expert Testimony

18          Plaintiff claims that the ALJ failed to properly credit the testimony of the Vocational

19  Expert (VE) in response to hypothetical questions which accurately reflected his functional

20  limitations.  This argument is based on plaintiff's previous arguments, which the court has

21  already rejected.  The ALJ did not err in rejecting Dr. White's opinions and not taking into

22  account the VA's disability ratings.  Therefore, the ALJ was not required to accept testimony

23  based on hypothetical limitations which were not contained in plaintiff's assessed RFC.

24  ////

25  ////

26  ////

VI.  CONCLUSION

      The court finds that the ALJ's decision is supported by substantial evidence in the record and based on the proper legal standards.  Therefore, IT IS ORDERED that:

      1.  Plaintiff's motion for summary judgment is denied;

      2.  The Commissioner's cross-motion for summary judgment is granted; and

      3.  The Clerk is directed to enter judgment in the Commissioner's favor.

DATED:  March 25, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE